**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Sherman McCoy, | |
| *Plaintiff,* | |
| v. | CIVIL ACTION NO. 21-1458 Lead Case |
| City of Philadelphia, et al., | |
| *Defendants.* | |
| Jamaal Simmons, | |
| *Plaintiff,* | |
| v. | CIVIL ACTION NO. 19-1648 |
| City of Philadelphia, et al., | |
| *Defendants.* | |
| James Frazier, | |
| *Plaintiff,* | |
| v. | CIVIL ACTION NO. 19-1692 |
| City of Philadelphia, et al., | |
| *Defendants.* | |
| Darnell Powell, | |
| *Plaintiff,* | |
| v. | CIVIL ACTION NO. 19-2155 |
| City of Philadelphia, et al., | |
| *Defendants.* | |

Arkel Garcia,

          *Plaintiff,*

    v.

City of Philadelphia, et al.,

          *Defendants.*

CIVIL ACTION
NO. 21-2884

Marvin Hill,

          *Plaintiff,*

    v.

City of Philadelphia, et al.,

          *Defendants.*

CIVIL ACTION
NO. 23-1002

Rafiq Dixon,

          *Plaintiff,*

    v.

City of Philadelphia, et al.,

          *Defendants.*

CIVIL ACTION
NO. 23-1650

Dwayne Handy,

          *Plaintiff,*

    v.

City of Philadelphia, et al.,

          *Defendants.*

CIVIL ACTION
NO. 24-1905

Curtis Kingwood,

               *Plaintiff,*

     v.

City of Philadelphia, et al.,

               *Defendants.*

CIVIL ACTION
NO. 24-4681

Ronald Thomas,

               *Plaintiff,*

     v.

City of Philadelphia, et al.,

               *Defendants.*

CIVIL ACTION
NO. 24-4914

Donta Regusters,

               *Plaintiff,*

     v.

City of Philadelphia, et al.,

               *Defendants.*

CIVIL ACTION
NO. 25-865

Corey Gibbs,

               *Plaintiff,*

     v.

City of Philadelphia, et al.,

               *Defendants.*

CIVIL ACTION
NO. 25-2810

Neftali Velazquez,

                    *Plaintiff,*

    v.

City of Philadelphia, et al.,

                    *Defendants.*

CIVIL ACTION
NO. 25-3720

**Pappert, J.**                                                                 **March 18, 2026**

## MEMORANDUM

Plaintiffs Jamaal Simmons, James Frazier, Arkel Garcia, Marvin Hill, Rafiq Dixon, Dwayne Handy, Curtis Kingwood, Ronald Thomas, Donta Regusters, Corey Gibbs and Neftali Velazquez were convicted of murder in Pennsylvania state court between 2012 and 2016.  And plaintiff Darnell Powell was arrested for murder in 2015.  Philip Nordo, who joined the Philadelphia Police Department in 1997 and became a homicide detective in 2009, participated in the investigations that led to the plaintiffs' arrests.  Nordo was fired for police-related misconduct in 2017 and later a jury convicted him of, among other things, sexual assault.  The plaintiffs' convictions or charges were vacated or dismissed at various points after Nordo's firing. They subsequently sued the City of Philadelphia, Nordo and other detectives under 42 U.S.C. § 1983, alleging primarily that Nordo and other detectives coerced or fabricated their confessions or witness statements, leading to their wrongful convictions or prosecutions.

The plaintiffs' cases were consolidated for pretrial purposes and the Court set an initial schedule for discovery and motion practice on the claims against the City.  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).  The plaintiffs moved for summary judgment on their failure-to-train and failure-to-supervise claims, and the City moved for judgment on all plaintiffs'

1

claims—unconstitutional-custom, failure-to-train, failure-to-supervise and failure-to-discipline. After considering the parties' submissions and holding oral argument, the Court grants the City's motion in part and denies the plaintiffs' motion entirely.

No rational jury could find the City (1) tolerated an unconstitutional custom of homicide detectives coercing or fabricating suspect and witness statements, (2) failed to supervise detectives or (3) failed to investigate and discipline Nordo.  But a jury could find the City failed to train detectives to lawfully interrogate suspects and witnesses.

I

Federal Rule of Civil Procedure 56 directs a district court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  This language compels judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A nonmoving party fails to satisfy this standard if "the record taken as a whole could not lead a rational trier of fact to find" in his favor. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citation omitted).  The nonmoving party must identify "specific facts, as opposed to general allegations," establishing each element of his claim.  10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2727.2, WESTLAW (database updated 2025).  And that party may rely on evidence only if it would be admissible at trial.  11 James Wm. Moore et al., *Moore's Federal Practice* § 56.91[1], LEXIS (database updated 2026).  Faced with cross-motions for summary judgment, the Court must "rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."  10A Wright, *supra*, § 2720.

2

II

Section 1983 does not allow plaintiffs to hold a municipality automatically liable for the unconstitutional actions of its employees under a theory of vicarious liability. *See Monell*, 436 U.S. at 691. Plaintiffs can hold municipalities liable "only for their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citation omitted). When a municipal officer harms a private party, therefore, that party must connect the officer's conduct to a municipal policy or custom. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). Plaintiffs may establish such a policy or custom in different ways. They may show a city knowingly acquiesced in an unconstitutional custom, *see Andrews v. City of Philadelphia*, 895 F.2d 1469, 1481 (3d Cir. 1990), or inadequately trained, supervised or disciplined the employees who caused them harm, *see Est. of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019).

A

The plaintiffs argue first the City maintained an unconstitutional custom of homicide detectives coercing or fabricating suspect and witness statements between 2000 and 2017.[1] To prevail, they must show a city policymaker knew, or should have known, of an unconstitutional custom and failed to remedy it. *Andrews*, 895 F.2d at 1481; *Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3d Cir. 1996). The plaintiffs identify former Philadelphia Police Commissioner Charles Ramsey as the policymaker. (Tr. of Oral Arg. at 13:20–22.) And they focus on

---

[1]    In their brief, the plaintiffs argue the City had an unconstitutional custom of detectives engaging in "investigative misconduct." (Pls.' Br. in Opp'n to City's Mot. for Summ. J. at 36, Dkt. No. 155-1.) But at oral argument, they clarified the claim to allege the City had an unconstitutional custom of detectives coercing or fabricating statements. *See, e.g.*, (Tr. of Oral Arg. at 17:4–6). Also, the plaintiffs argued for the first time at oral argument that the City maintained a facially constitutional custom of detectives, among other things, informally interrogating (or "warming up") suspects and witnesses before taking their formal statements. But courts may not consider unbriefed arguments raised for the first time during oral argument. *Millipore Corp. v. W.L. Gore & Assocs., Inc.*, No. 11-1453, 2011 WL 5513193, at *9 (D.N.J. Nov. 9, 2011).

3

constructive, not actual, knowledge. (*Id.* at 13:8–11.) They must therefore show Commissioner Ramsey should have known of an unconstitutional custom and failed to remedy the problem.

To show an unconstitutional custom, the plaintiffs must demonstrate a pattern of widespread and pervasive unconstitutional conduct before the violations at issue in their cases. *Brewington v. Keener*, 902 F.3d 796, 801–02 (8th Cir. 2018); *Bielevicz v. Dubinon*, 915 F.2d 845, 852–53 (3d Cir. 1990); *see also Pineda v. City of Houston*, 291 F.3d 325, 330 n.13 (5th Cir. 2002) (unconstitutional-custom theory first requires "proof of a pattern of unconstitutional conduct"); *Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1986) (same); *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1133 (11th Cir. 2021) (same); *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989) (same). This requires numerous prior instances of relevantly similar unconstitutional conduct. *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003). The plaintiffs here must therefore show "actual" "occurrences" of homicide detectives coercing or fabricating suspect and witness statements leading up to their arrests and convictions around the 2010s. *Carter*, 795 F.2d at 123; *Bielevicz*, 915 F.2d at 852. They failed on this record to do so.

1

The plaintiffs invoke first a "history of impropriety within the Philadelphia Police Department," (Tr. of Oral Arg. at 149:5–6), arguing the Department's "unconstitutional investigation tactics" have "existe[d] for decades," (Pls.' Submission of Additional Facts ¶¶ 28–32, Dkt. No. 155). But those arguments rely on evidence that is irrelevant or inadmissible.

The plaintiffs initially contend four federal-court opinions show Philadelphia police officers have engaged in misconduct since the 1980s. But even if admissible, none demonstrate detectives coerced or fabricated statements. Three involved allegations of unlawful searches and arrests. *See Cliett v. City of Philadelphia*, No. 85-1846, 1985 WL 3181, at *1 (E.D. Pa. Oct. 17,

4

1985); *Spring Garden United Neighbors, Inc. v. City of Philadelphia*, No. 85-3209, 614 F. Supp. 1350, 1351 (E.D. Pa. 1985); *Arrington v. City of Philadelphia*, No. 88-2264, (E.D. Pa. 1988). And the fourth involved *Brady* violations. *Dennis v. Wetzel*, 966 F. Supp. 2d 489, 500–18 (E.D. Pa. 2013).

Also irrelevant is the 1996 settlement between the National Association for the Advancement of Colored People and the City of Philadelphia. (Settlement and Monitoring Agreement at 1–44, Dkt. No. 156-162.) According to the plaintiffs, the agreement addressed allegations of police "misconduct" and "corruption." (Pls.' Submission of Additional Facts ¶ 31.) But that does not show detectives coerced or fabricated suspect or witness statements.

The plaintiffs' purported disciplinary and use-of-deadly-force evidence is likewise irrelevant. The plaintiffs assert that between 1997 and 2004, the Philadelphia Police Department's internal affairs division issued three reports criticizing the Department's disciplinary system. (*Id.*) They point to a mid-1990s expert witness report that concluded the Department's disciplinary system was "arbitrary." (*Id.*) And they argue the City did not attempt to reform its disciplinary system in the face of objections from the Fraternal Order of Police. (*Id.*) The plaintiffs next point out that several years ago the United States Department of Justice issued a report regarding the Philadelphia Police Department's use-of-deadly-force training. (*Id.*) But none of this demonstrates detectives coerced or fabricated suspect or witness statements.

Finally, the plaintiffs argue three newspaper articles show Philadelphia police officers have coerced or fabricated statements since the mid-1970s. In 1977, an article accused Philadelphia detectives of coercing suspects and witnesses during interrogations between 1974 and 1977. (*The Homicide Files* at 1–27, Dkt. No. 156-157.) The second article contained

allegations that detectives in the 1980s incentivized jailhouse informants to provide false statements by offering them opportunities to have sex in prison.  (*Sex for Lies* 1–22, Dkt. No. 156-161.)  And in 2005, an article reported a robbery suspect accused Nordo of helping him masturbate during an interview.  (*Police Probe Cop's Conduct* at 1–2, Dkt. No. 156-153.)

To begin, the articles are rank hearsay.  The Federal Rules of Evidence prohibit parties from offering hearsay (out-of-court statements offered to prove the truth of the matter asserted) unless they identify an exclusion or exception.  Fed. R. Evid. 801(c), (d), 802, 803, 804.  The articles are out-of-court statements, and the plaintiffs offer them for their truth: to prove Philadelphia police officers have engaged in "unconstitutional investigation tactics" "for decades."  (Pls.' Submission of Additional Facts ¶¶ 28–32.)  The plaintiffs do not argue a hearsay exclusion or exception applies, so they cannot use the articles as proof of occurrences of unconstitutional conduct.  *See Carter*, 795 F.2d at 123 ("press clippings, unsubstantiated by testimony, concerning alleged incidents of the use of excessive force" "fail[] to show actual . . . occurrences" of unconstitutional conduct); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 294–95 (5th Cir. 2005) (newspaper articles are "classic, inadmissible hearsay" to demonstrate a "pattern of unconstitutional conduct"); *Cano v. Bexar County*, 280 F. App'x 404, 406 (5th Cir. 2008) (per curiam) (newspaper articles "describing incidents" of excessive force are inadmissible hearsay to "demonstrate [an unconstitutional] custom"); *Handle v. City of Little Rock*, 772 F. Supp. 434, 437 (E.D. Ark. 1991) (newspaper articles "unsubstantiated by testimony" are "not . . . admissible to prove the truth of [a custom] of excessive force"); *Allen v. City of New York*, 480 F. Supp. 2d 689, 720 (S.D.N.Y. 2007) (newspaper articles are "inadmissible hearsay" to prove an unconstitutional "custom").

6

Even if the Court could consider the articles, they are irrelevant.  The 1977 article and the article detailing allegations from the 1980s are not probative of an unconstitutional custom of detectives coercing or fabricating statements leading up to the plaintiffs' arrests and convictions more than twenty or thirty years later.  As the Court explains below, there is no record evidence such a custom existed in the interim.  *See Watson v. Abington Township*, 478 F.3d 144, 156 (3d. Cir. 2007).  And while the 2005 article contained allegations that Nordo sexually assaulted a robbery suspect, nothing in the article suggests Nordo coerced or fabricated his statement.

2

The plaintiffs argue next they have "identified dozens of . . . wrongful convictions caused by . . . homicide detectives[] . . . during the relevant timeframe."  (Pls.' Br. in Opp'n to City's Mot. for Summ. J. at 37, Dkt. No. 155-1.)  They refer broadly to two-hundred-and-five paragraphs in their submission of additional facts.  (*Id.*); (Pls.' Submission of Additional Facts at ¶¶ 105–310.)

As an initial matter, the plaintiffs fail to explain how the twenty-six cases discussed in these paragraphs show detectives coerced or fabricated suspect or witness statements.  A brief's "stray reference to [] fact[s]—with no explanation of [their] import—fails to defeat a summary judgment motion."  *Wease v. Ocwen Loan Servicing, LLC*, 915 F.3d 987, 997 (5th Cir. 2019).  And the Court has no obligation to scour two-hundred-and-five paragraphs in a filing attached to the plaintiffs' brief to divine facts that could bear on an element of their claim.  *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995).

The Court nonetheless read all two-hundred-and-five paragraphs (and looked into the cases they purport to describe)—as the plaintiffs "hope[d]" it would do.  (Tr. of Oral Arg. at 179:5–8.)  The plaintiffs should have been more careful what they wished for.  They represent

7

the twenty-six cases discussed in those paragraphs concern "overturned convictions" involving police "coercion." (Pls.' Submission of Additional Facts ¶¶ 105–310.) But many do not. Some, for example, involve civil lawsuits unconnected to an overturned conviction. *See, e.g.*, (*id.* ¶¶ 221–25). Other paragraphs describe acquittals in criminal cases. *See* (*id.* ¶¶ 188–91). And some concern convictions that do not appear to have been overturned. As just a few examples, the plaintiffs cite allegations by Keith Tolbert, John McLaughlin and Ronnie Bradley. Tolbert pled guilty to third-degree murder and received a minimum sentence of twenty-two years. *Commonwealth v. Tolbert*, No. 1168 EDA 2017, 2018 WL 4940540, at *1 (Pa. Super. Ct. Oct. 12, 2018). The evidence showed he ran a prostitution ring in Philadelphia and chopped up of one his customers with an ax or a hatchet, and investigators found his victim's body in a river with all four limbs and the head missing. *Id.* And the Pennsylvania Superior Court denied Tolbert's post-conviction petition. *Id.* at *5. McLaughlin beat someone to death with a baseball bat, a jury convicted him of murder and the Pennsylvania Superior Court affirmed his conviction. *Commonwealth v. McLaughlin*, No. 886 EDA 2012, 2014 WL 10965422, at *1, *5 (Pa. Super. Ct. Apr. 1, 2014). Finally, Bradley shot and killed someone, a jury convicted him of first-degree murder and the Pennsylvania Superior Court affirmed his sentence. *Commonwealth v. Bradley*, No. 2219 EDA 2016, 2017 WL 3017729, at *1 (Pa. Super. Ct. July 17, 2017).

In sum, the twenty-six cases do not show any, much less sufficiently numerous, instances of detectives coercing or fabricating suspect or witness statements because the evidence the plaintiffs rely on is irrelevant, conclusory or inadmissible.

a

Four cases (assuming their supporting evidence is admissible) do not involve detectives coercing or fabricating statements. In the first, Jeremiah Coates sued the City alleging police

officers were deliberately indifferent to his diabetic needs during an unlawful arrest. (Civil Compl. at 11–15, Dkt. No. 156-108.) In the second, Zshani Al-Rasul alleged in an internal affairs complaint detectives unlawfully detained her for several days and questioned her about a cold murder without obtaining a statement. (Internal Affairs Report at 1–63, Dkt. No. 156-75.) In the third, a federal court issued a writ of habeas corpus for Steven Lazar because trial counsel performed ineffectively and the Commonwealth withheld evidence. (Mem. Op. at 1–31, Dkt. No. 156-119.) And in the fourth, Keith Tolbert alleged during another criminal defendant's post-conviction proceeding that he was coerced into *pleading* guilty. (Thorpe PCRA Hr'g at 38, 40 Dkt. No. 156-61.) Tolbert's case does not involve a coerced or fabricated *statement*. The plaintiffs would apparently have the Court believe Tolbert *confessed* during his interrogation, and their expert also states detectives fabricated Tolbert's "[s]tatement[]." (Chapman Report at 107, Dkt. No. 127-1.) But Tolbert testified during a 2017 post-conviction hearing involving another criminal defendant that he did not provide a statement during his interrogation. (Thorpe PCRA Hr'g at 38); *see also* (Tolbert Compl. at 6, Dkt. No. 156-69) ("Tolbert did not give anyone from the Homicide Unit a statement in reference to the death of Frank Zarzycki."). Tolbert instead made the conclusory assertion that he was coerced into pleading guilty. (Thorpe PCRA Hr'g at 40) ("I was coerced into pleading guilty."). (In denying his post-conviction petition in 2018, the Pennsylvania Superior Court rejected this argument, holding Tolbert voluntarily entered his plea. *See Tolbert*, 2018 WL 4940540, at *4–5. The plaintiffs also failed to mention this fact.) But prosecutors, not detectives, negotiate pleas, so even assuming the statements in Tolbert's internal affairs complaint could be admissible, his case could not possibly show detectives coerced or fabricated a confession.

b

Two cases (again assuming their supporting evidence is admissible) rely on the kind of vague and conclusory statements that do not suffice at summary judgment.  Connor McCarthy, for example, alleged in an internal affairs complaint that Philadelphia detectives beat him up during an interrogation in the Venango County jail.  (Interview Statement at 1–8, Dkt. No. 156-121.)  While McCarthy said he gave an accurate "statement" while incarcerated in Venango County, he never clarified whether he gave his statement before, during or after his interrogation.  (*Id.*)  And he never said who took his statement, and the Court has no idea of its alleged substance.  (*Id.*)  No jury could infer from two bare allegations—that (1) detectives beat McCarthy up and (2) McCarthy gave an accurate "statement" at some point during his incarceration—that detectives coerced his statement.

Similarly, the plaintiffs point to Richard Carpenter's 2007 motion for a preliminary injunction, in which he alleged he implicated someone in a murder after a detective "threatened" him.  (Mot. for a Prelim. Inj. at 7, Dkt. No. 156-130.)  But without any other allegations, no jury could infer detectives coerced or fabricated Carpenter's statement.

c

In the remaining cases, the plaintiffs rely on inadmissible hearsay.  Two cases depend on allegations in civil complaints.  For example, after a police officer shot and killed her brother, Danielle Crawley alleged officers coerced her to falsely state her brother pointed a gun at the officer.  (Civil Compl. 1–17, Dkt. No. 156-112); *see also* (Pls.' Submission of Additional Facts ¶¶ 202–06) (Nafis Pinkney).

Four cases involve pre-trial testimony in criminal cases.  In these, witnesses implicated someone in a murder, then recanted at that person's preliminary hearing claiming detectives

10

coerced or fabricated their statements. Rakym Dyer, for example, implicated Tremell Foster in a murder, but recanted at Foster's preliminary hearing, claiming detectives threatened to state he was involved in the murder unless he said "X, Y, and Z happened." (Foster Prelim. Hr'g at 13, Dkt. No. 156-89.) As another example, Shaquille Rainey implicated Amin Speakes in a murder, (Rainey Statement at 1–7, Dkt. No. 156-68), but recanted at Speakes' preliminary hearing, claiming a detective threatened to charge him with murder if he didn't give a statement, (Speakes Prelim. Hr'g at 14, Dkt. No. 156-67); *see also* (Pls.' Submission of Additional Facts ¶¶ 233–37 & 251–68, 267) (Raheem Isaac & Reuben White).

Five cases involve trial testimony in criminal cases. In these, witnesses implicated someone in a murder, then recanted at that person's trial claiming detectives coerced or fabricated their statements. As one example, Dwayne Thorpe was convicted of murder based in part on a statement by Allen Chamberlain. Chamberlain testified at Thorpe's trial that he signed the statement after a detective (1) threatened to charge him with murder and take away his son and (2) assaulted him. (Thorpe PCRA Op. at 12–13, Dkt. No. 139-42.) As another example, Braheim Parker was convicted of murder. Anthony Hyman implicated Parker in a statement but recanted at Parker's trial, saying detectives "basically made [him]" identify Parker. (Parker Trial Test. at 13, Dkt. No. 156-142); *see also* (Pls.' Submission of Additional Facts ¶¶ 167–169, 207–12 & 292–310) (John McLaughlin, Hassan Bennett & Christopher Goodwin).

Seven cases involve post-conviction testimony. In a few, defendants confessed to a murder, then claimed during pre-trial, post-conviction or grand-jury proceedings detectives coerced or fabricated their statements. As an example, years after India Spellman was convicted of murder, she testified in post-conviction proceedings she confessed after a detective slapped her lip and told her she could go home if she signed a statement. (Spellman PCRA Hr'g at 40–

11

41, Dkt. No. 156-98); *see also* (Pls.' Submission of Additional Facts ¶¶ 132–39, 170–77 & 178–87) (Ronnie Bradley, Unique Drayton & Obina Onyiah).  In other cases, witnesses implicated someone in a murder, then testified during post-conviction proceedings detectives coerced or fabricated their statements.  Rosalind Wood, for instance, testified in post-conviction proceedings that, years earlier, she implicated someone in a murder after a detective threatened to take away her kids.  (Thorpe PCRA Hr'g at 27–28, Dkt. No. 156-63); *see also* (Pls.' Submission of Additional Facts ¶¶ 112–18 & 140–54) (Vincent Wallace et al. & Keith Devine et al.).

Finally, two cases involve post-conviction filings.  In the first, the District Attorney's Office represented in a post-conviction brief that a murder witness told it in an interview that a detective forced her to sign a statement implicating someone in a murder.  (Commonwealth's Ans. to Second Am. Pet. at 18–19, Dkt. No. 156-114.)  In the second, a woman filed a declaration in post-conviction proceedings claiming, years earlier, a detective coerced her to falsely implicate someone in a murder.  (Bowen Decl. at 1–4, Dkt. No. 156-133.)

This is all hearsay.  As explained, parties may not offer out-of-court statements to prove the truth of the matter asserted unless they identify an exclusion or exception.  Fed. R. Evid. 801(c), (d), 802, 803, 804.  Civil complaints, former testimony in other proceedings, interviews reported in post-conviction briefs and declarations filed in post-conviction proceedings are out-of-court statements.  *E.g.*, *Damascus Bakery, Inc. v. Elwell*, No. 08-1568, 2010 WL 3359526, at *5 (D.N.J. Aug. 25, 2010) (complaints); *Patterson v. County of Oneida*, 375 F.3d 206, 219–20 (2d Cir. 2004) (former testimony); *cf. Green v. Baca*, 226 F.R.D. 624, 638 (C.D. Cal. 2005) (interviews reported in newspapers).  And the plaintiffs offer these materials for their truth—to

12

show detectives coerced or fabricated suspect or witness statements.[2]  No jury could consider this evidence, let alone infer from it actual occurrences of relevantly similar unconstitutional conduct.  *Carter*, 795 F.2d at 123; *see also Brewington*, 902 F.3d at 801–02 (hearsay cannot show a "pattern of widespread and persistent unconstitutional conduct"); *Smith v. City of Joliet*, 965 F.2d 235, 237 (7th Cir. 1992) ("hearsay . . . unsupported by affidavits or depositions of any kind" cannot prove other instances of unconstitutional conduct); *Mood v. County of Orange*, No. 17-cv-00762, 2019 WL 13036027, at *8 (C.D. Cal. July 25, 2019) (hearsay cannot prove "other similar acts" of unconstitutional conduct).

At oral argument, the plaintiffs responded in three ways.  Counsel first suggested the out-of-court statements from these cases would be admissible at trial.  He said he may be able to find the "individuals" who made the statements and that they could then testify at trial.  (Tr. of Oral Arg. at 125:2–4.)  True, the Court may consider hearsay statements at summary judgment if they would be admissible at trial.  *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016).  But counsel did not say who he would call, let alone prove they "*in fact* [will] be available to testify at trial."  11 Moore, *supra*, § 56.91[3A] (emphasis added).  It is "wholly speculative" that counsel could present the out-of-court statements in admissible form at trial.  *Id.*  At summary judgment, plaintiffs must demonstrate "more than just a remote possibility" that they can present admissible evidence at trial.  *Howley v. Experian Info. Sols., Inc.*, 813 F. Supp. 2d 629, 637 (D.N.J. 2011).  Counsel next argued his experts could act as "conduit[s]" to "articulate" the out-of-court statements from the above-described cases to the

---

[2]  Many of these statements constitute double hearsay.  For example, the post-conviction brief reporting a witness interview is an out-of-court statement containing a witness's out-of-court statement for the truth of the matter asserted.  *See, e.g.*, *Smith v. City of Allentown*, 589 F.3d 684, 694 (3d Cir. 2009).

13

jury. (Tr. of Oral Arg. at 126:3.) But experts cannot "simply transmit . . . hearsay" to a jury. *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008).

Counsel finally argued that if he couldn't rely on hearsay or his expert's transmission of that hearsay to the jury, he could never prove the unconstitutional-custom claim. *See* (Tr. of Oral Arg. at 179:15–17). That is not so. Any of the numerous attorneys representing the plaintiffs could have deposed the suspects or witnesses from the cases, or at a minimum provided affidavits or declarations. *See* Fed. R. Civ. P. 56(c)(1)(A). For their own reasons, strategic or otherwise, they chose not to and what they cannot now do to prove an unconstitutional custom is (1) rely on inadmissible hearsay, (2) say for the first time during oral argument the alleged statements would be admissible at trial because they may be able to find the declarants (many of whom are associated with decades-old criminal cases) and (3) attempt to sanitize the hearsay through an expert's recycling of it to the jury.

The plaintiffs also could have argued the hearsay former-testimony exception covers several of the out-of-court statements they invoke, given that they largely rely on former testimony by suspects or witnesses in murder cases. *See* Fed. R. Evid. 804(b)(1). But the plaintiffs never made this argument, so the Court has nothing upon which to assess whether the requirements of the former-testimony exception can be satisfied. *Id.*

3

The plaintiffs argue finally they "were wrongfully convicted due to Nordo's investigative misconduct," (Pls.' Br. in Opp'n to City's Mot. for Summ. J. at 37), and cite nearly seventy paragraphs in their submission of additional facts, (*id.*); *see* (Pls.' Submission of Additional Facts ¶¶ 35–104).[3]

---

[3]    Some of the plaintiffs the Court discusses in this section have settled with the City.

14

As an initial matter, counsel conceded at oral argument Commissioner Ramsey lacked constructive knowledge of the alleged unconstitutional conduct in the plaintiffs' cases until their convictions were vacated in recent years. (Tr. of Oral Arg. 126:8–13.)  Thus, even if the plaintiffs' own cases could show an unconstitutional custom, they cannot demonstrate Commissioner Ramsey should have known of it before their injuries occurred.  *Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 914 (3d Cir. 2003) (policymaker must know of a custom before the plaintiff's injury occurs).  That alone dooms their claim.

In any event, the plaintiffs rely here again on inadmissible evidence.  Nine of them— Marvin Hill, Donte Hill, Donta Regusters, Corey Gibbs, Ronald Thomas, Rafiq Dixon, Neftali Velazquez, Jamaal Simmons and Darnell Powell—allege detectives coerced or fabricated *witness* statements during their investigations.[4]  But they rely on out-of-court statements by these witnesses during criminal proceedings.

Five plaintiffs—James Frazier, Curtis Kingwood, Sherman McCoy, Arkel Garcia and Dwayne Handy—allege detectives coerced or fabricated their confessions.  They cite (1) Frazier's grand-jury testimony in Nordo's criminal proceeding, (2) Kingwood's statement to an investigator during a post-conviction interview, (3) McCoy's civil complaint, (4) Garcia's state post-conviction-relief brief and (5) Handy's post-conviction testimony.  But Frazier's grand-jury testimony, Kingwood's statement, Garcia's brief and Handy's post-conviction testimony are hearsay.  The plaintiffs wish to offer their out-of-court statements to prove their confessions were coerced or fabricated.  And McCoy can't rely solely on the allegations in his complaint.  *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000) ("At summary

---

[4]     The Court has very little information about some of these cases.  With respect to Marvin Hill, for example, the plaintiffs assert "witnesses identified Mr. Hill as the shooter despite providing earlier statements that contradicted the identification."  (Pls.' Submission of Additional Facts ¶ 43.)

judgment, a plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial.").

At oral argument, the plaintiffs suggested Frazier, Kingwood, McCoy, Garcia and Handy would testify at trial.  Counsel said he has their "cooperation."  (Tr. of Oral Arg. at 124:24.)  But "cooperation" does not mean the plaintiffs "will *in fact* be available to testify at trial."  11 Moore, *supra*, § 56.91[3A] (emphasis added).  Even if they are available for trial, the substance of some of their proposed testimony is unclear.  (Again, these individuals could have been deposed, or counsel could have submitted affidavits or declarations.)  The plaintiffs, for example, say Frazier's grand-jury testimony stands for the proposition that "Frazier falsely confessed to Nordo so that he could go home after [he] had been held in the Homicide Division for upwards of five . . . days."  (Pls.' Submission of Additional Facts ¶ 35.)  This vague, conclusory statement does not suffice to get to a jury.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).  That leaves Kingwood, McCoy, Garcia and Handy.  But even if their out-of-court statements and civil complaint could show detectives coerced or fabricated their confessions, four instances do not show a practice of unconstitutional conduct so widespread and persistent it has the force of law. *Hildreth v. Butler*, 960 F.3d 420, 428 (7th Cir. 2020) (four instances do not show a widespread custom).

B

The plaintiffs argue next the City maintained an unofficial custom of failing to train detectives about the proper ways to interrogate suspects and witnesses.  To prevail, they must show the City acted with "deliberate indifference to the rights of persons with whom the police came into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  This "stringent standard of fault" requires proof a city official "disregarded a known or obvious consequence" of his

16

failure to train. *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 410.  In most cases, deliberate indifference requires plaintiffs to show a city's employee(s) engaged in a "pattern of similar constitutional violations." *Connick*, 563 U.S. at 62.  Because the plaintiffs fail to show an unconstitutional custom, they cannot show a pattern of similar constitutional violations.

Plaintiffs, however, may also prove deliberate indifference using only the single instance of unconstitutional conduct against them.  If the need for a certain type of training is sufficiently "obvious," the failure to provide the obviously needed training may "properly be characterized as 'deliberate indifference' to constitutional rights." *City of Canton*, 489 U.S. at 390 n.10.  The failure to provide any training about the "limitations on the use of deadly force," for example, could meet this test because municipalities know that officers with firearms must sometimes attempt to arrest fleeing suspects. *Id.*  According to the plaintiffs, it should have been obvious to Commissioner Ramsey that detectives would coerce suspect and witness statements if they did not receive training about proper interrogation methods.

Homicide detectives frequently interrogate suspects and witnesses. *See Connick*, 563 U.S. at 63.  There is no reason to assume police academy applicants are familiar with the constitutional constraints on interrogation practices. *Id.*  And in the absence of training, there is no way for novice officers to obtain the legal knowledge they require. *Id.*  In this situation, there is an "obvious need for some form of training." *Id.*; *see Murphy v. City of Tulsa*, 950 F.3d 641, 652 (10th Cir. 2019) (given "the potential for coercion in interrogations, failing to teach police officers how to lawfully interrogate civilians might trigger municipal liability" under the single-incident theory left open in *Canton*); *Thomas v. Cumberland County*, 749 F.3d 217, 225 (3d Cir. 2014) (given the frequency of fights between inmates at a particular prison, the need to equip correctional officers with de-escalation and intervention tools was sufficiently obvious to trigger

17

single-incident liability); *see also Jackson v. City of Cleveland*, 925 F.3d 793, 836 (6th Cir. 2019) (failing to teach police officers how to comply with *Brady* triggers single-incident liability).

The plaintiffs must next show the City failed to train detectives how to lawfully interrogate suspects and witnesses. They must establish "the City's police training [wa]s so obviously inadequate." *Grazier ex rel. White v. Philadelphia*, 328 F.3d 120, 125 (3d Cir. 2003). A city acts in an obviously inadequate way if it fails to provide any relevant training. *Thomas*, 749 F.3d at 225.

While comparatively scant overall, the record evidence raises for the jury a question as to whether the City failed to provide relevant training. For example, John Verrecchio, a Philadelphia homicide detective, testified the Philadelphia Police Department had "no" rules "about the method of questioning" suspects and witnesses during the relevant time period. (John Verrecchio Dep. at 54:20–55:7, Dkt. No. 139-48.) He said he was never instructed how to conduct interrogations, (*id.* at 55:3–7), and he said he never received training on what "coercion" means in the context of suspect-and-witness interrogations, (*id.* at 261:13–14). A jury could similarly understand another detective's testimony as saying the Philadelphia Police Department never trained detectives on the legal meaning of "coercion" in the context of interrogations. (Ohmarr Jenkins Dep. at 25:11-20, Dkt. No. 138-12.)

In response, the City highlights Captain James Clark's testimony that homicide detectives knew they couldn't engage in coercive interrogation practices because they "learn those things in the police academy." (James Clark Dep. at 174:4–5, Dkt. No. 146-1.) But this just shows a genuine dispute as to whether the City provided training.

18

C

The plaintiffs argue next the City followed an unofficial custom of failing to supervise detectives during suspect and witness interviews. Again, they must show the City acted with "deliberate indifference." *City of Canton*, 489 U.S. at 388. Because the plaintiffs cannot show a pattern of constitutional violations, they try to fit their failure-to-supervise claim into the single-incident theory. They argue it should have been obvious to Commissioner Ramsey untrained detectives would coerce suspects and witnesses if supervisors did not monitor their interrogations.

The plaintiffs' failure-to-supervise claim is not cognizable. The Supreme Court has never extended single-incident liability outside the failure-to-train context. *See City of Canton*, 489 U.S. at 390 n.10 (single-incident liability applies to the "need to train"); *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 410 (single-incident liability applies to a "glaring omission in a training regimen"); *Connick*, 563 U.S. at 64 (single-incident liability applies to the "obvious need for . . . legal training"). The plaintiffs fail to cite, and the Court is not aware of, any authority to the contrary. *See Thomas*, 749 F.3d at 223 (in "certain situations" the "need for training" can be obvious). The logic of single-incident liability, outlined in *Canton*, does not apply to the plaintiffs' claim. As explained, homicide detectives frequently interrogate suspects and witnesses, and there is no reason to assume police academy applicants are familiar with the constitutional constraints on interrogation practices. *Connick*, 563 U.S. at 63. But in the absence of supervision, there is a clear way for inexperienced officers to obtain the legal knowledge they require: training. *Id.* There is no similar "obvious need" for supervision; there is instead an obvious need for training. *Id.* And supervision would not have provided the detectives with the legal tools to properly interview suspects and witnesses. The plaintiffs' claim presumes the City

19

failed to train detectives, including supervisors, how to lawfully interview suspects and witnesses.

D

Finally, the plaintiffs claim the City maintained an unofficial custom of failing to investigate and discipline Nordo. To succeed, they must show the City acted with "deliberate indifference." *Connick*, 563 U.S. at 61. In this context, the plaintiffs must show Nordo engaged in a "pattern of similar constitutional violations." *Id.* at 62; *see also Pineda v. Hamilton County*, 977 F.3d 483, 495 (6th Cir. 2020) (explaining a failure-to-investigate claim requires a pattern of similar constitutional violations). And they must show the City failed to adequately investigate the pattern and discipline Nordo. *Beck*, 89 F.3d at 974.

The plaintiffs fail to show Nordo engaged in a "pattern" of similar constitutional violations; they point to one incident. (Tr. of Oral Arg. at 184.) A robbery suspect, Dawud Simmons, filed an internal affairs complaint in 2005 alleging Nordo sexually assaulted him during an interview. (Simmons Internal Affairs Compl. at 1–206, Dkt. No. 138-7.) Specifically, Simmons claimed Nordo asked him if liked pornography and asked him to pull down his pants, touched his penis and told him to masturbate. (*Id.* at 7.) Nordo left the room, and when he returned, Simmons told Nordo he had ejaculated. (*Id.*) Nordo said he wished he had seen that happen and then kissed Simmons. (*Id.*) Simmons also confessed to the robbery during the interrogation, (*id.*), though it is unclear whether he confessed before or after the alleged sexual assault. Assuming the Simmons' incident involves a relevantly similar constitutional violation, it cannot show a pattern.

The plaintiffs, moreover, cannot show the City failed to investigate Simmons' complaint. They must establish the City responded in an "obviously inadequate" manner. *Grazier ex rel.*

20

*White*, 328 F.3d at 125. A city's response is obviously inadequate if it demonstrates inattention, *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001), or if it is shallow, *Beck*, 89 F.3d at 973. By contrast, a city responds adequately if it makes a meaningful attempt to investigate. *See Baez v. Town of Brookline*, 44 F.4th 79, 89 (1st Cir. 2022).

The City's response was in no way "obviously inadequate." After Lieutenant Anne Martin interviewed thirteen individuals, including Simmons and Nordo, she concluded there was not enough evidence to sustain the allegation. Simmons admitted he had been high on cocaine and Xanax at the time of his interview. (Simmons Internal Affairs Compl. at 8.) And he had given false statements during his interrogation. (*Id.* at 11.) Plus, many detectives had gone in and out of Simmons' interrogation, making it "difficult to believe" a detective would "openly fondle" him. (*Id.* at 15.) Finally, there were "major discrepanc[ies]" in Simmons' allegations. (*Id.*) While Simmons told one detective he masturbated and ejaculated while Nordo was watching him, he told another detective he masturbated and ejaculated after Nordo left the room. (*Id.*) Given all of this, Lieutenant Martin concluded she could not sustain Simmons' allegation.

In response, the plaintiffs argue Lieutenant Martin failed to search Nordo's internet history to ascertain whether he watched pornography. If Nordo watched pornography, the argument goes, Lieutenant Martin may have been able to corroborate Simmons' allegation that Nordo asked him if he liked pornography. That, in turn, would lend credibility to Simmons' overall complaint. But deliberate indifference does not ask what a city could have done differently. The plaintiffs also criticize Lieutenant Martin for reaching her conclusion before forensic evidence confirmed the presence of semen in the interrogation room. But the presence of semen does not prove Nordo assaulted Simmons, especially given Simmons' inconsistent accounts of when he masturbated.

Finally, the plaintiffs argue that Lieutenant Martin should have sustained Simmons' allegation because Nordo was convicted more than one decade later for, among other things, sexual assault.  But deliberate indifference is not measured by the "benefit of hindsight." *Jones v. Wellham*, 104 F.3d 620, 627 (4th Cir. 1997).

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
Gerald J. Pappert, J.